IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. |
| | : | |
| v. | : | 18 U.S.C. §§ 1343, 1346 (Pecuniary and |
| | : | Honest Services Wire Fraud) |
| **MELBA V. NORRIS,** | : | |
| | : | |
| Defendant. | : | |
| | : | **FILED UNDER SEAL** |
| | : | |

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Zachary Meisenheimer, being first duly sworn, hereby depose and state as follows:

### PURPOSE OF AFFIDAVIT

1. This affidavit is submitted in support of a criminal complaint charging the defendant, MELBA V. NORRIS ("NORRIS"), with Pecuniary and Honest Services Wire Fraud in violation of Title 18, United States Code, Sections 1343, 1346. The affidavit is also submitted in support of an arrest warrant for NORRIS.

### THE AFFIANT

2. Your Affiant is a Special Agent ("SA") with the U.S. Department of Labor ("DOL"), Office of Inspector General ("OIG"), Office of Investigations – Labor Racketeering and Fraud, and has been so employed since March 2012. Your Affiant has beeen assigned to the Washington, D.C. Regional Office since October 2015 and was previously assigned to the DOL-OIG New Jersey Field Office. Your Affiant is a graduate of East Carolina University and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, and has received advanced in-service training in labor racketeering and program fraud investigations. Since beginning employment with the DOL-OIG, your Affiant has

Case: 1:20-mj-00203
Assigned to: Judge G. Michael Harvey
Assign Date: 10/15/2020
Description: COMPLAINT W/ARREST WARRANT

investigated criminal matters related to theft or embezzlement from labor unions, including violations of Title 29, United States Code, Section 501(c); conspiracy, including violations of Title 18, United States Code, Section 371; and money laundering offenses, including violations of Title 18, United States Code, Section 1956(a)(3). He has served as an affiant on multiple affidavits in support of criminal complaints and has participated in numerous executions of arrest warrants.

3. Your Affiant is assigned to this investigation and has participated in it since the case was initiated. The facts in this affidavit come from your Affiant's personal observations, training and experience, and information obtained from other agents, witnesses, and agencies. In addition, your Affiant has reviewed invoices and other payment documentation, as well as PayPal and Square account records, to include subscription and transaction records that, along with an analysis of various credit card and bank records, provides support for the factual assertions made in this affidavit. Witness interviews that your Affiant personally conducted or memorializing documentation that he reviewed are also a basis of his knowledge. This criminal complaint is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of your Affiant's knowledge, or the knowledge of others, about this matter.

## BACKGROUND

4. The Service Employees International Union ("SEIU") is a labor organization headquartered in Washington, D.C, comprised of nearly 2 million dues paying healthcare, public sector, and property services workers organized across 150 local branches throughout the United States and Canada. SEIU is considered a "labor organization" engaged in industries and activities affecting commerce within the meaning of the Labor Management Reporting and Disclosure Act ("LMRDA"), Title 29 United States Code, Sections 402(i) and (j).

5. As a labor organization subject to the provisions of the LMRDA, the officers,

agents, shop stewards and other representatives of SEIU occupy positions of trust and are required to hold its money and property solely for the benefit of SEIU and its members, and to manage and expend such money and property in accordance with SEIU's constitution and by-laws. Appendix C, Section 4(a) of the SEIU Constitution states:

> "The assets and funds of a labor organization are held in trust for the benefit of the membership. Members are entitled to assurance that those assets and funds are expended for proper and appropriate purposes. The Union shall conduct its proprietary functions, including all contracts for purchase or sale or for the provision of significant services, in a manner consistent with this Code. All officers, executive board members and employees of SEIU and SEIU Affiliates, whether elected or appointed, have a trust and high fiduciary duty to honestly and faithfully serve the best interests of the membership."

6. Fiduciary duties under Appendix C, Section 7, of the SEIU constitution further require that all "[c]overed individuals shall not use, convert or divert any funds or other property belonging to SEIU to such individual's personal benefit or advantage."

7. As well, Article XIII, Section 6(a), of the SEIU constitution obligates union officers to maintain and provide records, receipts, and other supporting financial documentation for transactions made using union financial accounts, to include its American Express business credit card accounts.

8. UNION OFFICIAL 1 is known to reside in Maryland. During all relevant times, UNION OFFICIAL 1 was employed as the Operations Manager of the Property Services Division at SEIU and worked at the headquarters. SEIU issued to UNION OFFICIAL 1 an American Express Business credit card that they were instructed to use only for union related purchases in connection with UNION OFFICIAL 1's duties and responsibilities.

9. Defendant NORRIS is known to reside in Georgia. NORRIS is a close associate of UNION OFFICIAL 1 and has no affiliation with SEIU, whether as an employee, agent, member, or otherwise.

10. SUBJECT 1 is known to reside with UNION OFFICIAL 1 in Maryland. SUBJECT 1 is the fiancé of UNION OFFICIAL 1 and has no affiliation with SEIU, whether as an employee, agent, member, or otherwise.

11. SUBJECT 2 is known to reside with NORRIS in Georgia. SUBJECT 2 is the significant other of NORRIS and has no affiliation with SEIU, whether as an employee, agent, member, or otherwise.

12. It was part of this scheme that NORRIS and UNION OFFICIAL 1 used PayPal and Square accounts. PayPal and Square are digital payment platform companies based in California. Among other services, PayPal and Square provide a way for individuals and businesses to make electronic financial payments and monetary transfers online. In addition to using personal accounts registered under UNION OFFICIAL 1's SEIU email address (UNION OFFICIAL 1@SEIU.ORG), both UNION OFFICIAL 1 and NORRIS operated or purported to operate the following shell business accounts that, based on subpoenaed PayPal and Square registration and transaction log records, were used in some way to execute this scheme:

| COMPANY NAME | ACCOUNT TYPE | REGISTERED USER | REGISTERED EMAIL ADDRESSES |
|---|---|---|---|
| **SHELL ACCOUNTS** | | | |
| Charmel's Catering (1) | PayPal Business (#P-9955) | Melba Norris | charmelscatering@gmail.com<br>melbanorris2016@gmail.com |
| Charmel's Catering (2) | PayPal Personal (#P-5189) | Melba Norris | SUBJECT 2@gmail.com<br>melbanorris03@gmail.com<br>melbanorris2016@gmail.com<br>melbanorris2017@gmail.com |
| AVL Services (1) | PayPal Personal (#P-2181) | UNION OFFICIAL 1 | avlservicestravel@gmail.com<br>UNION OFFICIAL 1@gmail.com |
| AVL Services (2) | PayPal Business (#P-5265) | UNION OFFICIAL 1 | UNION OFFICIAL 1@comcast.net<br>cheapflights250@gmail.com |
| Events by LaDawn (1) | PayPal Business (#P-1537) | Melba Norris | melbanorris03@gmail.com<br>mvnorris10@gmail.com |
| Events by Ladawn (2) | PayPal Personal (#P-4644) | Melba Norris | eventsbyladawn@yahoo.com<br>melbanorris2016@gmail.com |
| Events by LaDawn (3) | Square Business (#S-RDK6) | Melba Norris | eventsbyladawn@yahoo.com |
| Perfect Reflection | Square Business | SUBJECT 2 | perfectreflectionphotography@gmail.com |

|  | (#S-B3H0) |  |  |
|---|---|---|---|
| Hunter Translations | N/A | N/A | huntertranslations@gmail.com |
| **GIFT CARD ACCOUNT(S)** | | | |
| N/A | Unknown | Unknown | SUBJECT 1@comcast.net |

## SUMMARY OF THE INVESTIGATION

13. UNION OFFICIAL 1 embezzled over $500,000 from SEIU through a variety of means, over $72,000 of which was orchestrated through a kickback scheme involving NORRIS. As more fully described below, beginning in or around November 2016, and continuing through November 2017, in the District of Columbia and elsewhere, UNION OFFICIAL 1 transferred over $60,800 to NORRIS's PayPal and Square shell accounts by executing 29 transactions using their SEIU issued credit card. It was also part of this scheme that UNION OFFICIAL 1 used this credit card to purchase at least 56 gift cards valued at over $11,200, loaded those funds into one or more PayPal accounts, and then transferred those funds to a NORRIS controlled PayPal account. In turn, NORRIS kicked back to UNION OFFICIAL 1 over $26,300, or approximately 37% of the total stolen proceeds received from UNION OFFICIAL 1. To continue the scheme to defraud and to obtain money from SEIU, NORRIS and UNION OFFICIAL 1 made materially false and fraudulent pretenses, representations, and promises, to include the use of proxies and creation and submission of falsified documentation.

14. UNION OFFICIAL 1's fraud was discovered in or about the fall of 2017, when UNION OFFICIAL 2, a SEIU executive who had assumed UNION OFFICIAL 1's responsibilities when UNION OFFICIAL 1 took maternity leave, was reviewing SEIU American Express credit card statements and discovered that UNION OFFICIAL 1's credit card statement reflected numerous unauthorized purchases.

15. When confronted by UNION OFFICIAL 2, UNION OFFICIAL 1 did not dispute the suspicious charges, estimated at the time to be between $28,000 and $40,000. UNION

OFFICIAL 1 acknowledged that "there were mistakes" and that "the money should have been refunded to the Amex card." UNION OFFICIAL 1 also volunteered to "pay the money back," and stated that they knew they could not come back to work. On November 1, 2017, UNION OFFICIAL 1 submitted a resignation email to SEIU effective that same day. A final paycheck of approximately $9,000 was also voluntarily forfeited.

## THE KICKBACK SCHEME

16. Your Affiant obtained invoices that UNION OFFICIAL 1 submitted to SEIU in order to justify payments on their SEIU issued credit card that were made to Events by LaDawn, Perfect Reflection Photography, and Hunter Translations. Between August 2016 and June 2017, 12 invoices were submitted from Events by LaDawn totaling $29,450.10; between January 2017 and May 2017, 8 invoices were submitted for Perfect Reflection Photography totaling $11,503, and; between April 2017 and June 2017, 8 invoices were submitted for Hunter Translations totaling $18,767.57. According to UNION OFFICIAL 2, at no point during UNION OFFICIAL 1's employment did SEIU utilize any PayPal, Square, or other digital payment platform to conduct union related financial transactions. Nevertheless, PayPal and Square transaction log records for Events by LaDawn and Perfect Reflection Photography accounts show deposits that correspond to billed invoice amounts that were made from PayPal accounts registered under UNION OFFICIAL 1's SEIU work email address and linked to their SEIU credit card.

17. NORRIS is the registered agent for Events by LaDawn based on a corporate filing submitted on November 24, 2015, with the Maryland Secretary of State. The listed address is a residence that NORRIS shares with SUBJECT 2 in Georgia. As of January 16, 2020, the status of the business is listed as forfeited and the business is not in good standing. A review of the Events by LaDawn Square and PayPal account transaction logs also do not reflect any discernable

business related expenses made during the relevant timeframe. Rather, the logs show personal purchases made from the accounts, and deposits that are primarily attributable to UNION OFFICIAL 1, and NORRIS's Charmel's Catering accounts.

18. NORRIS also controlled the Perfect Reflection Photography Square account for the sole purpose of executing this scheme, and used SUBJECT 2 as a proxy by utilizing SUBJECT 2's name and email address to register the account. Account records show that this account is only linked to one bank account, which is registered to NORRIS. NORRIS also tried to unsuccessfully link this same bank account to the Charmel's Catering PayPal account that is registered under her name. Moreover, Square transaction records reflect that from the time the account was created and the first deposit of $1.00 was made on January 27, 2017, to when the second deposit in the amount of $4,463 was transferred the next day, and up until the final depoist of $2,795 was executed on May 16, 2017, the source of all seven deposits into the Perfect Reflection Photography Square account originated from UNOIN OFFICIAL 1's SEIU issued credit card. Square ultimately deactivated this account on July 2, 2017, due to suspicious activity. Furthermore, a review of the Perfect Reflection Square account transaction logs do not reflect any discernable business related expenses made during the relevant timeframe.

19. As it relates to Hunter Translations invoices, PayPal and Square records did not reflect any accounts opened under this business name. The over $18,700 in payments for Hunter Translations invoices did, however, correspond to payments made in the same amount and around the same invoice dates to a Charmel's Catering PayPal account registered under NORRIS's name. At least three of these transactions that were supposedly to Hunter Translations but deposited into the Charmel's Catering account were made using wires during regular weekday work hours when UNION OFFICIAL 1 would have been expected to work. Furthermore, to conceal these payments

to Charmel's Catering, NORRIS went so far as to email an IRS Form W-9 for Hunter Translations to UNION OFFICIAL 1, who two minutes later during work hours, and using their SEIU email account (UNION OFFICIAL 1@SEIU.ORG), forwarded NORRIS's email and accompanying Form W-9 to a SEIU accountant. Together, the lack of PayPal and Square subpoena returns for any accounts associated with Hunter Translations, and the September 26, 2017 email correspondence between NORRIS, UNION OFFICIAL 1, and SEIU, tend to show that Hunter Translations was created in name only to disguise payments to Charmel's Catering. The hidden nature of this arrangement further underscores that Charmel's Catering did not intend to nor did it provide any service or thing of value to SEIU to warrant the over $18,700 in received payments.

20.  A search of UNION OFFICIAL 1's work email account uncovered received emails that contained sample invoice templates similar to the templates that UNION OFFICIAL 1 submitted to SEIU ostensibly on behalf of Hunter Translations, Perfect Reflection Photography, and Events by LaDawn.

21.  In addition, between May 7, 2015, and June 14, 2017, UNION OFFICIAL 1 used gift cards to embezzle and launder an additional $11,200 to NORRIS's Events by LaDawn account. Purchase receipts obtained from Staples and Office Depot stores in Virginia, Maryland, Washington, D.C., and online at NewEgg.com, show that UNION OFFICIAL 1 bought hundreds of gift cards with their SEIU issued credit card, mostly in the amount of $100 to $200 each, totaling over $204,000. According to UNION OFFICIAL 2, the purchase of gift cards, especially so many, was not a SEIU practice and had no legitimate union related purpose. So to disguise unauthorized gift card purchases, UNION OFFICIAL 1 usually bundled one or two union-related purchases with several gift cards in a single credit card transaction. Receipts that UNION OFFICIAL 1 submitted to SEIU for these purchases were compared to the actual receipts obtained from vendors

and did not match; gift card purchases on the submitted receipts were replaced with what appeared to be union related items that were not actually purchased.

22. UNION OFFICIAL 1 loaded the funds from no less than 56 gift cards—each valued at $200 and totaling over $11,200—into one or more PayPal accounts registered under SUBJECT 1's email address. What is more, PayPal transaction logs for NORRIS's Events by LaDawn account show 56 deposits, each for $200, between August 29, 2016, and October 18, 2016, from the PayPal account(s) associated with SUBJECT 1's email address. And even though SUBJECT 1 has no known affiliation to SEIU, in nearly all of these transactions, the names of SEIU employees appear as the individuals who are ostensibly sending gift card funds to the Events by LaDawn account.

23. It was part of this scheme for NORRIS and UNION OFFICIAL 1 to use conduits to hide their own involvement. NORRIS, for example, had UNION OFFICIAL 1 deposit approximately $11,500 in the Perfect Reflection Square account registered under SUBJECT 2's name but that was only linked to NORRIS's bank account. SUBJECT 2's signature even appears on the falsified Hunter Translations IRS Form W-9 that NORRIS emailed to UNION OFFICIAL 1. UNION OFFICIAL 1 similarly attempted to disguise their role in the scheme by listing SUBJECT 1's email address when registering the online payment account(s) used to launder the $11,200 in ill-gotten gift card proceeds to NORRIS's Events by LaDawn account.

24. SUBJECT 1 denied any knowledge or involvement in this scheme.

25. In some instances, UNION OFFICIAL 1 tried to further disguise the transfer of SEIU proceeds to NORRIS by first routing the embezzled funds through UNION OFFICIAL 1's AVL Services account. PayPal transaction logs reflect that UNION OFFICIAL 1 made payments totaling $2,900 from the AVL Services account into NORRIS's Events by LaDawn and Charmel's

Catering accounts on three such occasions.

26. PayPal records for UNION OFFICIAL 1's AVL Services PayPal accounts further evince that, between November 7, 2016, and September 29, 2017, NORRIS transferred from her Events by LaDawn accounts no less than 25 kickback payments worth approximately $26,300 so that UNION OFFICIAL 1 would continue to abuse their position.

27. According to UNION OFFICIAL 2, at no point did NORRIS, UNION OFFICIAL 1, or any entity under their control, whether real or otherwise, perform any service or conduct any legitimate business on behalf of SEIU to legally justify any payment of money that belonged to SEIU and its dues paying members but was instead used by NORRIS and UNION OFFICIAL for their own personal benefit.

28. In sum, there is probable cause to support a criminal complaint for the charge of Pecuniary and Honest Services Wire Fraud for NORRIS based on her knowing transmission of kickback payments to UNION OFFICIAL 1 by wire communications through interstate commerce, including through Washington, D.C., that were intended to incentivize UNION OFFICIAL 1 to continue obtaining money from SEIU by means of materially false or fraudulent pretenses, that is, by submitting phony documentation to SEIU to justify continued payments to NORRIS, which deprived SEIU and its membership of pecuniary interests and honest services, in violation of Title 18, United States Code, Sections 1343, 1346.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

29. Your Affiant respectfully requests, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a criminal complaint. In support of this request, your Affiant notes that personal appearance before the Court when a viable alternative exists would

be inconsistent with current public health guidance from federal and District of Columbia authorities. Your Affiant submits that Assistant U.S. Attorney Ahmed Baset, an attorney for the United States, is capable of identifying his voice and telephone number for the Court.

## CONCLUSION

13. Based on your Affiant's training and experience, and the information provided in this affidavit, there is probable cause to believe that beginning in or around November 2016, and continuing through November 2017, in the District of Columbia and elsewhere, MELBA NORRIS did knowingly and willing commit Pecuniary and Honest Services Wire Fraud, in violation of Title 18, United States Code, Sections 1343, 1346.

*Zach Meisenheimer*

Zachary Meisenheimer
Special Agent
Department of Labor - Office of Inspector General,
Office of Investigations – Labor Racketeering and Fraud

Subscribed and sworn to before me telephonically by SA Meisenheimer per Fed. R. Crim. P. 4.1 on this 15 day of October, 2020.

The Honorable G. Michael Harvey
UNITED STATES MAGISTRATE JUDGE